CHASE F. PARKER, trustee,[1] vs. BEACON HILL
ARCHITECTURAL COMMISSION
(and a companion case).[2]

Nos. 88-P-1065 & 87-173.

Suffolk. November 20, 1987; February 9, 1989. — April 24, 1989.

Present: ARMSTRONG, KAPLAN, & FINE, JJ.

*Beacon Hill Architectural Commission. Boston. Administrative Law*, Judicial review.

The judge hearing an action for judicial review of a decision by the Beacon Hill Architectural Commission placing conditions on a certificate of appropriateness for the plaintiff's proposed structural changes to a certain rowhouse, correctly determined that the commission's reasons for imposing the conditions were not insufficient in law or unwarranted by the evidence. [215-217]

There was no merit to a plaintiff's contention, in an action for judicial review of a decision by the Beacon Hill Architectural Commission, that the plaintiff's proposed structural changes to a certain rowhouse were not renovation but new construction. [217]

A plaintiff seeking review of a determination by the Beacon Hill Architectural Commission placing conditions on the plaintiff's proposed structural changes to a certain rowhouse did not demonstrate that the commission had acted, in his respect, inconsistently with its determinations in regard to other nearby property. [217-218]

A judge did not err in denying a motion by the plaintiff in a civil action for leave to amend his complaint and to reopen the case to introduce evidence, five months after the conclusion of the trial but before the judge rendered a decision, where the facts sought to be put forth were known or should have been known to the plaintiff at the time of the trial. [218]

The city of Boston, on behalf of the Beacon Hill Architectural Commission, properly commenced an action, pursuant to St. 1955, c. 616, § 11, to enjoin a property owner from building a fifth story on a certain rowhouse in violation of conditions contained in a certificate of appropriateness

[1] Of 29-31 Brimmer Street Associates Realty Trust.

[2] City of Boston v. Chase F. Parker, trustee.

issued by the commission and in violation of the building code, not-
withstanding the pendency of an appeal by the property owner of his
action for judicial review of the commission's decision imposing the
conditions. [218-220]


CIVIL ACTION commenced in the Superior Court Department
on December 20, 1985.

The case was heard by *Catherine A. White*, J.

*Guy A. Carbone* (*Arthur R. Silen* with him) for Chase F.
Parker, trustee.

*John R. Devereaux*, Assistant Corporation Counsel, for
Beacon Hill Architectural Commission.

CIVIL ACTION commenced in the City of Boston Division
of the Housing Court Department on September 19, 1986.

The case was heard by *E. George Daher*, C.J.

*Arthur R. Silen* (*Guy A. Carbone* with him) for Chase F.
Parker, trustee.

*John R. Devereaux*, Assistant Corporation Counsel, for the
city of Boston.

KAPLAN, J. These are consolidated appeals. The main appeal
is by the plaintiff, Chase F. Parker, owner through a realty
trust of the premises 31 Brimmer Street, Boston, from a judg-
ment of the Superior Court. The judgment upheld a decision
of the Beacon Hill Architectural Commission (commission)
which denied Parker's proposal to make certain changes in the
building's exterior, including changes reflecting the proposed
construction of an added (fifth) story to the building. The
related appeal is by Parker from an order of the Boston Housing
Court enjoining Parker from that construction.

*Main Appeal* (88-P-1065). The Superior Court action was
in the form of an "appeal" by Parker from the commission's
adverse determination. See § 10 of the commission's constitu-
tive statute, St. 1955, c. 616, as amended. The commission
answered and counterclaimed.[3] Trial ran for ten days; the judge
took an on-site view and has made detailed findings. Our short

---

[3] The counterclaim refers to a "notice of violation" of May 19, 1987. See
note 14, *infra*.

account of the facts draws upon the findings and some relevant record materials.

1. The house at No. 31 is a rowhouse taken to have been built about 1869 and attributed to the firm of Snell and Gregorson. We learn that it has architectural significance, and its historic character and appearance are well documented. It was in much dilapidated condition when Parker bought it (and 29 Brimmer Street) in February, 1984. Parker planned to renovate and restore it. The work, as it proceeded, involved repeated applications to the city of Boston's inspectional services department (ISD) for building permits. And, as the house was located in the defined Beacon Hill district, commission approval was necessary for all changes of the structure that would be visible from a public way. § 3.[4]

An application by Parker to ISD of October 17, 1984, included, as "proposed work," "[d]o structural repairs to remedy unsafe and dangerous conditions. Repairs to include [among sundry items] . . . removal of front wall and replacement with concrete block." On October 23, 1984, the commission issued its "certificate of appropriateness" (COA)[5] for dismantling the front or facade wall. This detailed document appeared to envisage a replication in substance of the existing facade which harked back to the historic model. The COA set out how the work was to be done, including, for instance, directions for saving, to the extent feasible, the original bricks.[6] Parker has complained about some needless hardships, as he saw them, laid on him by the commission, but he took no formal exception to the COA; the commission has protested that Parker did not

---

[4] The critical language appears as a definition of "exterior architectural feature" in § 3: "the architectural style and general arrangement of such portion of the exterior of a structure as is designed to be open to view from a public way, including kind, color and texture of the building material of such portion and type of all windows, doors, lights, signs, and other fixtures appurtenant to such portion."

[5] Provisions regarding applications for such certificates, hearings, and issuance appear at § 7.

[6] The certificate prescribed details under the headings of method of demolition; roof; sash, oriel, and trim; brackets, sandstone, and ornamental moldings; bricks; lintels and sills; use of professional adviser.

comply with some of the conditions, but it did not take action at the time to enforce exact compliance.

The next rounds of the case are central. The building as it stood in 1984, and as pictured historically, consisted of four stories of which the top story was in mansard form. There was an oriel, a kind of bay, at the second story. Parker planned to make the fourth story flush, and to add a fifth story with a mansard roof. He planned an oriel extending over the second and third levels. He wanted also to build a twelve-car garage below grade (we suppose the garage would underlie No. 29 as well as No. 31) with door openings around grade level. These were the main features (affecting external appearances) set out in Parker's application of September 11, 1985, for a COA.[7]

By letter of October 15, 1985, the commission notified Parker of its denial of the COA. After dealing adversely with the garage openings, the commission's secretary wrote: "[T]he proposed increase in the height of 31 Brimmer would be inimical to the historical appearance of the building (which is documented in photographs). . . . It would also result in an even roof line with the adjoining buildings and thereby diminish the picturesque silhouette of the rowhouses in this location." As to the oriel, its elongation "would substantially alter the proportions of the building."

Parker filed a COA application with the same proposed main features dated November 12, 1985. (By that date, Parker, despite the commission's disapproval of a fifth story, had proceeded with an addition above the fourth story which was the occasion for the commission's cease and desist order of November 14, 1985, and became the subject of the related appeal from the order of the Housing Court.) Finally we have the decisive COA issued by the commission under date of December 2, 1985. This dealt with various matters; chiefly it denied, for reasons similar to those in the October 15, 1985, letter, all three Parker proposals — the fifth floor, extended oriel, and garage openings. However, the commission permitted Parker to modify the fourth story: this was to be flush

---

[7] The application may be taken to have superseded an application of November 6, 1984.

rather than mansard. The modification was considered advisable to preserve the adjacent wall with its elaborate frieze at the fourth story of 29 Brimmer Street.

On December 16, 1985, Parker timely entered his notice of intention to appeal the conditions of the COA of December 2, and this grounded Parker's action in Superior Court, filed December 20, 1985.[8] We should add here that the garage proposal was later withdrawn.

2. Upon an "appeal" from a "determination" of the commission, "[t]he court shall hear all pertinent evidence and shall annul the determination . . . if it finds the reasons given . . . to be unwarranted by the evidence or to be insufficient in law . . . ." § 10. Under *Marr* v. *Back Bay Architectural Commn.*, 23 Mass. App. Ct. 679, 682-684 (1987), interpreting similar language in the Back Bay statute, the plaintiff has "the burdens of proof and persuasion" on these matters; the inquiry whether the reasons given are insufficient in law can ordinarily be answered "from the face of the [commission's] decision";[9] a court can hold the reasons to be unwarranted by the evidence "only if persuaded by a fair preponderance of the evidence that the action of the commission was unreasonable, whimsical, capricious or arbitrary,"[10] and here a court should be careful not to substitute its judgment for the commission's.[11]

The plaintiff accepts, since he does not dispute, the *Marr* canons; and the judge in the present case strove to carry them out. She held, and we agree, that the commission's reasons

---

[8] Two subsequent actions of the commission of February 21, 1986, and May 15, 1986, were substantially reiterative of prior actions and need not be detailed.

[9] According to *Marr* (at 683), this inquiry "is analogous to that in an appeal from a decision of a board of appeals on an application for a special permit under a zoning ordinance or by-law when it is claimed that the decision is based on legally untenable ground."

[10] The analogy again is to the like question in the kind of appeal mentioned in note 9.

[11] The specialized talents and experience required for carrying out the work of the commission are reflected in the qualifications for its membership set out in § 4 of the statute. (The commission is organized as a "board" in the city's building department. § 4.)

for conditioning the COA as it did were not shown to be faulty in law or in factual support, for they carry out the statutory purpose "to maintain [the] district as a landmark in the history of architecture and as a tangible reminder of old Boston as it existed in the early days of the [C]ommonwealth" (§ 2), upon consideration (in rendering a COA) of "the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the exterior architectural feature involved and the relationship thereof to the exterior architectural features of other structures in the immediate neighborhood." § 7. The judge also held, and we agree, that the reasons given comport with the commission's guidelines, promulgated under the statute, for the renovation of structures in the historic district.[12]

The judge could well hold the commission did not err in rejecting the plaintiff's contention that raising a fifth story with a prominent mansard roof and doubling the height of the oriel would be more in keeping with the "French academy style" of the original neighborhood, or in better harmony with existing houses than the preservation of the original architectural features of 31 Brimmer aimed at by the COA under review. The judge gave weight to the opinion of the expert on the part of the commission[13] that the commission's judgment accorded with generally accepted standards in historic preservation; that faithful restoration was the appropriate action where adequate documentation was available on the original building; and, even when such restoration was no longer achievable, the preservation of original height and mass was the appropriate action to maintain as far as possible the architectural relationships of the buildings on the block, more particularly the relationships among the buildings at 31 Brimmer and to its left, designed at the same time by the same architect. If permitted, the pro-

---

[12] The judge cited general guidelines Nos. 1 (original architectural features to be maintained whenever possible rather than replaced), 3 (replacement of missing features to be based on evidence of original features), and 8 (no new openings in facades).

[13] Here we follow the judge's summary of the expert's testimony.

posed Parker alterations would, inappropriately, fasten atten-
tion on 31 Brimmer and cause it to dominate the scene.

3. (a) By way of rebuttal, Parker attempts to argue that what
was involved in the alterations of No. 31 was not renovation
but new construction, in substance the erection of a new build-
ing, and on that basis, he contends, it was wrong for the
commission to impose the major conditions of the COA. This
is a surprising reversal of position. To go back to the beginning,
the COA of October 23, 1984, dealing with the dismantling
and rebuilding of the facade, looked to the faithful reproduction
as far as feasible of the historic model. The determination was
not appealed. This fixed the character of the work as renovation,
not new construction. Parker's later proposals to add a story
and extend the oriel, even had they been acceptable, would
hardly have betokened new construction.

If it be assumed that over-all new construction was afoot,
Parker would not be helped. Parker points to the commission's
general guideline No. 5: "Contemporary design for new build-
ings shall not be discouraged if such design is of excellent
quality and is compatible with the size, scale, color, materials,
and character of neighboring buildings and environment." But
even with new construction, said the judge, "the commission
could require that plaintiff build a building containing specific
architectural features in an effort to maintain and preserve"
the Beacon Hill district; particularly so, where there was "strong
documentation as to the characteristics of the historic building
previously on the site and as to the buildings in the surrounding
area. Were it otherwise," the judge wrote, "all of the buildings
on Brimmer Street that are structurally unsound could be torn
down and rebuilt without regard to preserving the historic dis-
trict." We may add that Parker's proposals do not appear to
invoke "contemporary design" but rather describe (unaccept-
able) incursions upon the old design.

(b) Parker argues, further, that the commission, in imposing
the conditions, was unfair to him — harder, less flexible or
accommodating in his case than in its transactions with other
landowners nearby. He cites 21 Brimmer Street, 22 Phillips
Street, and 6 Grove Street. The curious may read the details

about those locations in the judge's findings. We are not per-
suaded that the determinations for the locations mentioned
were inconsistent (invidiously or otherwise) with those made
in the present case.

4. Five months after the conclusion of trial in Superior Court,
but before decision, Parker moved to amend his complaint and
reopen the case to introduce evidence about a current alteration
at 33 Brimmer Street. The judge did not abuse her discretion
in denying the motion. She was justified in finding that the
facts about 33 Brimmer "were known to or should have been
known to" Parker at the time of trial and should have been put
forth then, if at all. Parker was seeking to cite 33 Brimmer as
another instance of unequal treatment. However, it appeared
there was no inconsistency between the allowance of the alter-
ation on the fifth level of 33 Brimmer and the disallowance
of Parker's proposals for 31 Brimmer. In fact, the commission
believed the alteration being made at 33 Brimmer did not
comply with the relevant COA and was subject to enforcement
proceedings. The judge pointed out that, if Parker, as an abut-
ter, was aggrieved by the commission's final action regarding
33 Brimmer, he might pursue a separate remedy.

We conclude that the judgment of the Superior Court should
be affirmed.[14]

*Related Appeal* (87-173). On September 19, 1986, the city
of Boston commenced a civil action in the Boston Housing
Court[15] to secure injunctive relief against Parker's building a
fifth story on 31 Brimmer, as he had already partially done,
in violation of COA conditions and without benefit of an effec-
tive building permit. A judge of the Housing Court found,
after trial, as against Parker's claim that he was merely sealing
the fourth story roof, that he was actually raising a fifth story

---

[14] The judgment, besides confirming the commission's decision regarding
the property, directs Parker to correct certain violations (see note 3 *supra*)
and complete the facade in accordance with the COA of December 2, 1985.

[15] Criminal complaints had previously been filed. One, on behalf of ISD,
was withdrawn and a second, for the commission, failed, a verdict being
directed.

and committing the violations mentioned.[16] On November 22, 1986, the judge entered an order enjoining Parker "from any further work on the top of 31 Brimmer Street" and ordering "the removal of the partially completed fifth story." However, having been advised of the current action in Superior Court against the commission, the judge stayed his order, pending determination of that action.

Parker's appeal from the order was heard in our court on November 20, 1987, after trial but before decision of the Superior Court action. We ordered the appeal to remain pending undecided upon our docket until further order, as "[i]t appeared to be common ground, acknowledged by counsel for Boston, that the determination of [the Superior Court] action, when it occurs, and whether in favor of one party or the other, should as a practical matter be taken as dispositive of the Housing Court action under appeal."

With the Superior Court action concluded and now being affirmed by us, we return to the appeal of the stayed Housing Court order, which is before us on the briefs originally submitted. Parker appears not to contend that the order is wrong on the merits, but says the Housing Court should not have entertained the action because it had to be advanced in the form of a compulsory counterclaim in the Superior Court action under Mass.R.Civ.P. 13(a), 365 Mass. 758 (1974), or because of the "[p]endency of a prior action in a court of the Commonwealth," rule 12(b)(9), 365 Mass. 755, namely, the Superior Court action. If dismissal was not called for on either ground, then, anyway, Parker argues, the action (or part of it) should have failed because he did not receive notice of the building code violation.

Parker had plenty of actual notice of the building code violation. Regarding the procedural arguments, at least so far as the city was suing in the right of the commission (which is enough for the present purpose), we think a separate action

---

[16] The judge wrote: Parker "has brazenly sought to circumvent the [commission] and the State Building Codes of the City of Boston by deciding that he will not countenance any interference."

was authorized by § 11 of the statute.[17] In any case, to dismiss now on procedural grounds would be inconsistent with the common understanding when this appeal was argued, and would, besides, be an intolerable waste of time and effort, leading nowhere.

Thus we affirm the Housing Court order and vacate the stay.

These proceedings have wound their way for five years. It is time for acerbities between the parties to cease, and for 31 Brimmer to emerge renewed in the spirit of Snell and Gregorson's design.

> *In No. 88-P-1065, judgment affirmed. In No. 87-173, order affirmed and stay vacated.*

---

[17] This authorizes the court upon application of the commission to restrain and order removal of construction in violation of the act.