Gordon, Robert B., J.
Presented for decision is the Defendant’s Motion to Dismiss, premised on the contention that the Plaintiffs challenge to the decision of the Beacon Hill Architectural Commission (approving issuance of a Certificate of Appropriateness, subject to certain provisos, for a construction project at 40 Beacon Street in Boston) is untimely. Disposition of this motion calls upon the Court to construe the procedural framework for applying for construction proposals within the Historic Beacon Hill District, as set forth in Chapter 616 of the Massachusetts Acts of 1955, as amended (the “Act”). For the reasons which follow, the Court concludes that the Verified Complaint is timely under the statute, that jurisdiction has properly vested in this Court to address Plaintiffs challenge to the decision of the Commission, and that the Defendant’s Rule 12(b)(1) Motion to Dismiss must be DENIED.
I. BACKGROUND
Plaintiff CEM Realty Trust owns 39 Beacon Street in Boston, Massachusetts, a properly located within the Historic Beacon Hill District (the “Historic District”). The 39 Beacon Street property directly abuts 40 Beacon Street, a piece of real estate that includes condominium units owned by Defendant DIV Forty Beacon Property Trust (“DIV Trust”). DIV Trust is the proponent of a construction project that would entail several modifications to the exterior architectural features of 40 Beacon Street.
The Act established both the Historic District and the Beacon Hill Architectural Commission (the “Commission”). This legislation empowers the Commission to review (among other things) proposed changes to the exteriors of buildings in the Historic District, and to make determinations as to the appropriateness of such changes in light of the declared historical preservation purposes of the Act. The procedural mechanisms in the Act by which the Commission reviews and either approves or rejects proposed architectural changes within the Historic District — and by which aggrieved parties may appeal the same — mark the fault lines of the present dispute.
Sections 7 and 10 of the Act set forth the framework governing the Commission’s review and disposition of applications seeking a “Certificate of Appropriateness” (“COA”), the statutory designation representing approval of proposed projects within the Historic District. A COA from the Commission is a sine qua non for all proposed construction projects within the District. A review of the multi-step process by which approvals and denials of requested COAs are issued to property owners follows.
*229 A.Application for a COA
Under Section 7, Paragraph 1 of the Act, a proponent of a construction project within the Historic District activates the Commission’s review by filing an application for a COA. The statute provides:
Certificate of Appropriateness. — No person shall construct any exterior architectural feature in the historic Beacon Hill district. . . until such person shall have filed with the secretary of the commission an application for a [COA] . . . and a [COA] shall have been issued as hereinafter provided in this section.
B.Notice of Public Hearing on COA Application
Section 7, Paragraph 2 of the Act provides that, within eight days after the filing of an application for COA, the Commission must notify all estates deemed to be “materially affected” by the proposed project of a public hearing to be held on the application. The statute provides:
Within eight days after the filing of an application for a [COA], Saturdays, Sundays and legal holidays excluded, the commission shall determine the estates deemed by it to be materially affected by such application and, unless a public hearing on such application is waived in writing by all persons entitled to notice thereof, shall forthwith cause its secretary to give by mail, postage prepaid, to the applicant, to the owners of all such estates as they appear on the then most recent real estate tax list, and to any person filing written, request for notice of hearings, such request to be renewed yearly in December, reasonable notice of a public hearing before the commission on such application.
C.Commission Action on COA Application
Section 7, Paragraph 3 of the Act provides that, after the public hearing, the Commission shall make a determination as to whether the proposed construction project is “appropriate” given the desired preservation of the Historic District. The statute thus provides:
As soon as conveniently may be after such public hearing or the waiver thereof, but in all events within thirty days, Saturdays, Sundays and legal holidays excluded, after the filing of the application for the [COA], or within such further time as the applicant may in writing allow, the commission shall determine whether the proposed construction [project] will be appropriate to the preservation of the historic Beacon Hill district for the purposes of this act. . .
Section 7, Paragraph 4 of the Act, densely drafted, then sets forth four possible scenarios by which the Commission may give effect to its determination of appropriateness. The first three result in the issuance of a COA, and the fourth entails a denial of the application for COA. The statute provides as follows:
[1] If the commission determines that the proposed construction [project] . . . will be appropriate or,
[2] although inappropriate, owing to conditions [especially affecting the structure involved, but not affecting the historic Beacon Hill district generally], failure to issue a [COA] will involve a substantial hardship to the applicant and issuance thereof may be made without substantial detriment [to the public welfare] or derogation [from the intent and purposes of this act], or
[3] if the commission fails to make a determination within the time hereinbefore prescribed, [then]
the secretary of the commission shall forthwith issue to the applicant a [COA].
If the commission determines that a [COA] should not issue, the commission shall forthwith spread upon its records the reasons for such determination and may include recommendations respecting the proposed construction [project] . . .
D.Commission Notice of Determination to Applicant and Other Interested Parties Requesting Such Notice
Promptly following the making of its determination regarding issuance or non-issuance of a COA, the Act requires the Commission to give notice of such determination — and, in the case of a denial, a statement of the reasons for the denial and any recommendations related to the same — to the applicant and to any other persons who filed a written request to receive notices from the Commission regarding the project application. Section 7, Paragraph 4 of the statute thus provides in its final sentence as follows:
Thereupon the secretary of the commission shall forthwith by mail, postage prepaid, give notice of such determination to the applicant and to every person filing written request for such notice, transmitting therewith an attested copy of the reasons and recommendations, if any, spread upon the records of the commission.
E.Aggrieved Person’s Notice and Filing of Appeal
Section 10 of the Act vests exclusive jurisdiction over appeals from decisions of the Commission in the Suffolk Superior Court, and prescribes a two-part procedure for the noticing and then filing of such appeals. The statute provides:
Any person aggrieved by a determination of the commission may, within thirty days after the making of such determination, appeal to the superior court sitting in equity for the county of Suffolk; provided that within eight days, exclusive of Saturdays, Sundays and legal holidays, after the secretary of the commission mails the notices provided for by the fourth paragraph of section seven, such person files with such secretary written notice of his intention to appeal. The court shall hear all perti *230 nent evidence and shall annul the determination of the commission if it finds the reasons given by the commission to be unwarranted by the evidence or to be insufficient in law to warrant the determination of the commission or make such other decree as justice and equity may require.
II. DIV TRUST’S APPLICATION FOR A COA
On December 5, 2012, DIV Trust filed an Application for COA with the Commission in connection with its proposed project for modifications to the exterior of 40 Beacon Street. Although the record does not explicitly so reflect, there appears to be no dispute that the Commission made a timely assessment of those estates “materially affected” by the COA application, and provided appropriate written notice of public hearing on the application to such parties.
On December 20, 2012, the Commission held the first of three noticed public hearings addressed to the 40 Beacon Street project. A second hearing took place on August 15, 2013 (having been continued from a previously scheduled date of January 17, 2013); and the Commission conducted its final public hearing on the application on September 19, 2013. At this final hearing, the Commission initially voted (3-2) to deny a COA to DIV Trust. Following an extended discussion among members of the Commission, however, the Commission reversed course and voted (5-0) to grant a COA for the project — subject, significantly, to the applicant’s satisfaction of certain “provisos” or conditions attached to the substance and scope of the construction. These provisos were referenced only cursorily during the hearing, and were not explained in any thorough way in the Commission’s oral vote on September 19.[2]
The Commission issued its written COA on the 40 Beacon Street project on October 8, 2013. The written COA summarized the Commission vote on the application that had been taken on September 19, as well as the reasons for such vote, and set forth in greater detail the conditioning provisos attached to the COA. For reasons not apparent in the record, the Commission’s secretaiy failed to provide Plaintiff CEM Really Trust with notice of its October 8, 2013 COA until October 21, 2013, notwithstanding the fact that Plaintiff had filed a written request that it be provided with such notice in accordance with Section 7, Paragraph 4 of the Act.
By letter dated October 22, 2013, well within the eight-day period provided for by Section 10 of the Act, CEM Realty Trust gave written notice to the Commission of its intent to appeal the Commission’s issuance of a COA to DIV Trust. Thereafter, on November 7, 2013, 30 days after issuance of the Commission’s October 8, 2013 written COA and appurtenant provisos, and despite the Commission’s delay in providing the notice of determination required by the Act, Plaintiff filed its Verified Complaint in this Court. By this action, Plaintiff seeks to set aside the COA granted to the Defendant as contrary to the provisions and purposes of the Act.
III. THE DEFENDANT’S MOTION TO DISMISS
On December 9, 2013, Defendant DIV Trust filed the instant Motion to Dismiss. The entire basis of this motion is Defendant’s contention that the clock starting the 30-day period in which to appeal a determination of the Commission began to run on September 19, 2013, the date the Commission voted in public hearing to approve DIV Trust’s application for a COA. Measuring the appeal period in this manner, Defendant argues, Plaintiffs November 7, 2013 filing of its Verified Complaint (48 days after the Commission’s September 19 vote) was 18 days too late. Defendant thus maintains that this Court lacks subject matter jurisdiction over the appeal, and urges its dismissal pursuant to Mass.R.Civ.P. 12(b)(1).
DISCUSSION
Defendant’s motion proceeds from the premise that the period in which to appeal an adverse Commission determination under the Act was triggered by the Commission’s vote to approve its COA application at the conclusion of the public hearing held on September 19, 2013. If Defendant is correct, then Plaintiffs Verified Complaint is untimely under Section 10 of the Act. For its part, however, Plaintiff argues that the language and logic of the Act require construing Section 10 to start the running of the 30-day appeal clock when the Commission actually issues and gives notice of either its written COA or its denial of an application therefore and supporting reasons. If Plaintiff is correct, then the November 7, 2013 filing of its Verified Complaint was timely.
This question appears to be one of first impression in Massachusetts, and text-based arguments can be marshaled to support either side of it. Having considered the matter carefully, however, and though the question is not free from doubt, the Court believes that the better reading of the statutory language and the larger logic of the law militate in favor of the Plaintiffs position.
Defendant’s argument is attractively (but misleadingly) simple. Section 10 of the Act provides in pertinent part as follows:
Any person aggrieved by a determination of the commission may, within thirty days after the making of such determination, appeal to the superior court sitting in equity for the county of Suffolk.
The Defendant argues that, inasmuch as the Legislature chose to activate the start of the appeal period by the Commission’s “determination,” rather than the Commission’s issuance of a written COA or distribution of notices of same to interested parties, the triggering “determination” must be deemed to have occurred with the Commission’s definitive vote of appropriateness in public hearing on September 19 (rather than with the subsequent issuance of the COA *231 and notices thereof to the applicant and other interested parties). Merriam-Webster’s Dictionary, after all, defines “determination” as “the act of officially deciding something,” which the Commission is asserted to have done by its approval vote on DIV Trust’s application in public hearing. The Defendant then buttresses this plain-language argument with references to analogous historic district statutes in which the Legislature in terms started the clock of an appeal period in precisely the manner urged by the Plaintiff. See, e.g., Chapter 395 of the Acts of 1970, Sec. 12 (“Any person, or the Historic District Commission aggrieved by a decision of the Board of Selectmen, may appeal to the Superior Court sitting in equity for the county of Nantucket, provided that such appeal is filed in said Court within 15 days after such decision is recorded”); G.L.c. 40, Sec. 12 [Commonwealth’s Historic District Statute] (A person aggrieved by “a determination of the commission . . . may, within twenty days after the filing of the notice of such determination . . . with the city or town clerk, appeal to the superior court sitting in equity for the county in which the city or town is situated”). These statutes show that when the Legislature intends for an appeal period to be triggered by the recording, filing or transmittal of a written document, the argument goes, it knew how to do so. Not having done so in the Act, Section 10’s appeal period should be deemed commenced by the “determination” made by the Commission during its September 19, 2013 public hearing and not by the ensuing issuance of its COA.
Although this reading of the Act can be defended with certain principles of statutory construction, as the Defendant does, it is by no means compelled. “Determination,” of course, means what it means — a definitive or, in the words of Merriam Webster’s Dictionary, “official” decision on something. But this common-sense construction of the term hardly dictates the answer to the question posed by Defendant’s motion. Which determination of the Commission triggers the appeal period of Section 10? The Commission arguably made a determination in its vote on DIV Trust’s COA application on September 19. But was it a definitive decision, or was it “official” (to borrow Merriam-Webster’s term)? Oral action by vote — occurring prior to the creation of a statutorily required written COA that must be noticed in writing to the applicant and other interested parties — would not seem to qualify as either definitive or official. More to the point, largely undefined provisos and conditions referred to in the COA vote, which were not clarified until issuance of the written COA nearly three weeks later, strongly suggest that this initial vote in public hearing was something other than the appeal-triggering determination contemplated in Section 10.
Reinforcing this interpretation of the term “determination” is the fact that the verb “determine” is utilized throughout the Act when referring to actions and decisions of the Commission. Thus, for example, under Section 7, Paragraph 2, the Commission “shall determine” the estates materially affected by a filed application before it notices and conducts a public hearing into same. Likewise, per Section 7, Paragraph 3, the Commission “shall determine” whether the proposed project “will be appropriate” — a determination the Act provides is to be made “after [the] public hearing.” Three of the four decisional scenarios under Section 7, Paragraph 4 (see ante), in turn, use the term “determine” to refer to actions the Commission may take in respect to whether to approve or reject a requested COA. Finally, the Commission is called upon in Section 7, Paragraph 4 to mail notices of its “determination” to the applicant and to all other persons who filed a written request for such notice. Thus, when Section 10 of the Act states that a person “aggrieved by a determination of the Commission” shall have thirty days “after the making of such determination” to appeal to Suffolk Superior Court, it is hardly self-evident that the determination to which it refers is the initial vote in favor of a COA taken during a public hearing. Indeed, given that the portion of the Act that refers most specifically to the Commission’s appropriateness determination states that this determination will be made “after [the] public hearing” (emphasis added), it strains the statutory text to argue as Defendant does that the Commission’s appealable determination in this case occurred during the September 19 public hearing.[4]
Further to this point, it bears emphasis that the Act provides that a person aggrieved by a Commission “determination” will have 30 days following the “making” of such determination to file an appeal in Superior Court. This subtle shift in the language of appeal— whereby a person challenging a determination has 30 days from the determination’s “making'’ — would seem to underscore the notion that some formal memorialization of a Commission’s decision (a “making”) is required to ripen the decision into a “determination” and thereby start the running of the appeal clock. Anomalies can certainly result if an appeal period is deemed to run from the date of an underlying Commission determination, as opposed to the date of such determination’s documented “making.” Consider the case of a COA that does not issue because the Commission fails to make a “determination” on an application within the time prescribed by the statute— the third scenario for disposition of a COA application under Section 7, Paragraph 4 of the Act (see ante). In this scenario, inaction by the Commission means that there has been no determination — or, in the words of the Act, “the commission fails to make a determination” — and the secretary of the Commission is thereupon directed to issue a COA to the applicant. In such event, other interested parties may be aggrieved by the issuance of the COA; but there can be no start to the appeal period because, under the Defendant’s cramped construction of the statute, there has been *232 no predicate “determination.” Jurisdiction to review the COA’s issuance would never vest in the Superior Court. This nonsensical result is plainly not the intent of the Legislature, and it can be avoided by interpreting Section 10 of the Act as the Court now does — viz., that the appeal-triggering action of the Commission is not the decision it reaches or fails to reach by voice vote during a hearing, but rather the subsequent memorialization (or “making”) of that determination in either a written and noticed COA or a written and noticed statement of reasons for denial “spread upon the Commission’s records.”[5]
Leaving aside the text of the Act, which can again support reasonable arguments in either direction,[6] the more fundamental logic of the statute and the sequence by which events related to a COA application occur tilt strongly in favor of treating the issuance and notice of a COA (or the written statement of denial) as the determination from which an appeal under Section 10 is taken. At some point after the conclusion of its public hearing, Section 7, Paragraph 3 of the statute requires the Commission to determine whether the proposed project is “appropriate to the preservation of the [Historic District].” Section 7, Paragraph 4 then provides that the Commission will determine whether or not to issue a COA, and mail to the applicant and other interested parties written “notice of such determination” along with the “reasons and recommendations, if any, spread upon the records of the commission.” The purpose of these provisions is unmistakably clear. Potentially aggrieved neighbors and other interested parties (many of whom may not have attended the public hearing, and for this reason filed requests that they be provided written notice of any Commission action) need to be informed of Commission-approved changes to architecture within the Historic District. To read Section 10 to mean that an aggrieved non-applicant’s time to appeal a COA determination runs from a vote taken at a public hearing that many such persons will likely not have attended is to invite the real possibility that such parties will lose their rights of appeal before even becoming aware of the Commission’s action.[7] This cannot possibly have been the intent of the Legislature in enacting a statute that bulges with notice provisions designed to protect the interests of those who might want to be heard — either before the Commission or in Superior Court — in opposition to proposed changes to architecture within the Historic District. Indeed, the Act’s extensive notice provisions for the benefit of project opponents will cease to serve their core function — indeed, will cease to have much meaning at all — if an aggrieved party’s appeal period is deemed to have started running before such person has even received his statutorily due notice.
Non-applicants like the Plaintiff are by no means the only parties for whom pre-appeal notice of Commission action (and the reasons therefore) is critical. Project proponents denied a COA need to understand the reasons for the Commission’s action, and this is why the Act expressly requires the Commission to issue written notice of same to disappointed applicants. Our courts have recognized that the purpose of this notice requirement is to provide aggrieved persons with a factual basis upon which to challenge the legal sufficiency of adverse Commission determinations on appeal. See Marr v. Back Bay Architectural Comm., 23 Mass.App.Ct. 679, 682-84 (1987). With the Act thus explicitly calling for a recorded articulation of reasons to be provided in written form to applicants denied a COA, it is illogical to read the statute as starting the running of an appeal clock to challenge such Commission action at the point of a public hearing that — as in this case — precedes the appearance of such reasons by weeks or more.[8]
Reinforcing this reasoning is the Act’s requirement that those who contemplate taking an appeal from a Commission determination first provide written notice of such intent to the Commission secretary within eight days of the Commission’s transmittal of the required notice(s) of its COA determination.[9] In the present case the Commission did not make its written COA determination until October 8, 2013, and did not mail notice of same to the Plaintiff until October 21, 2013. Plaintiff thereupon provided the Commission with a timely notice of its intent to appeal on October 22, 2013; but at this point, if Defendant’s reading of Section 10 is to be credited, the 30-day appeal period from a determination deemed to have occurred on September 19, 2013 had already expired. That is, even though the record discloses that the Plaintiff took just one day following the mailing of the Commission’s notice of its COA determination to transmit a notice of intent to appeal (and not the full eight days allowed by the Act), Defendant’s interpretation of Section 10 renders the appeal itself time-barred. Stated differently, Defendant’s reading of the Act would have the Plaintiff compelled to commence its appeal by October 19, 2013; yet the earliest Plaintiff could have transmitted notice of its intent to appeal was three days later — by which point the appeal itself would have been time-barred. This obviously makes no sense on each of two levels, renders the notice of intent provision of the law a nullity,[10] and casts serious doubt on the interpretation of the Act that the Defendant has put forward. See Bankers Life & Cos. Co. v. Commissioner of Insurance, 427 Mass. 136, 140 (1998) (statutes should be construed “so that effect is given to all its provisions, so that no part will be inoperative or superfluous”).
Defendant’s response to these anomalous outcomes is to argue that they are a creature of the idiosyncratic fact pattern in this case, in which the Commission took longer than contemplated by the Act to issue its COA and provide notice of same to those entitled to receive it. On this premise, Defendant argues that such outcomes should not drive the Court’s interpretation of the statute. Nothing in the *233 Act, however, precluded the Commission from proceeding in precisely the manner it did, or from doing so in the future. And, although Defendant relatedly stresses that DIV Trust was represented by counsel throughout and faithfully attended the Commission’s hearings, these facts (at least to the undesigned) indict rather than support its severe construction of the statute. The Court needs to construe the Act in a way that makes sense, produces properly sequenced legal events, and fulfills evident legislative intent in the broad sweep of disputes that may arise thereunder, not merely in the case subjudice. If a well-represented party like DIV Trust can lose its rights through a curious interpretation of the Act’s appeal requirements, then the Court must be wary of such a construction if it is not (as here) dictated by the terms of the statute.
CONCLUSION AND ORDER
When the language and logic of the law are considered together, it is the judgment of the Court that Plaintiff CEM Trust’s appeal rights under Section 10 of the Act were triggered on October 21, 2013, when the Commission provided written notice of its COA per the terms of Section 7, Paragraph 4. The Defendant’s Motion to Dismiss, premised on the contention that such appeal rights were activated on September 19, 2013, when the Commission voted orally during a public hearing to approve a COA for DIV Trust, misreads the Act and must be DENIED.

The parties evidently arranged for an unofficial stenographic transcript to be made of this hearing, and the Defendant appends a copy of same to its Motion to Dismiss. Notably, the Commission’s discussion of the conditions it was attaching to its approval — the very conditions that converted an initial denial of the requested COA to an eventual approval — fill just one-half page of this 116-page transcript.

Tle Court acknowledges the Defendant’s contention (advanced for the first time in oral argument) that what occurred on September 19 was a public hearing that took place within a broader public meeting, with the public “hearing” concluding with the taking of the final evidence and the Commission then separately making its determination during the non-hearing/deliberative portion of its meeting. In this way, the Commission’s determinative vote can be deemed to have taken place “after” the public hearing, as called for by the statute. With respect, however, the Court is unable to find anything in the record lending support to such a multi-stage narrative. Rather, all evidence is to the effect that the Commission noticed a singular “public hearing,” at which it took statements and other information from interested parties and then voted on the COA application before it. The notion of the public hearing having terminated, and the Commission then reconvening to vote during a non-hearing portion of its meeting, appears nowhere in either the transcript of the meeting or in any of its related documents.

Defendan argues that, in this particular context, the Commission’s failure to act within 30 days should be deemed its “constructive determination,” and that a constructive determination from such point in time should mark the commencement of the appeal period. Imaginative though this argument is, it calls upon the Court to equate a non-determination with a determination, and at the same time to disregard the actual determination to which the Act refers in the same sentence when fixing the start date for Section 10’s appeal period. This is not a natural construction of the statutory text.

Even Defendant’s citation to other statutes more explicitly tethering a party’s appeal to a Historic District Commission’s filing or recording of an action cuts both ways. “The Legislature knows how to do it when it wants to” argument is noted; but it is no less true that these statutes, along with the Appeals Court’s decision in Parker, might reflect a broadly accepted consensus that it makes no practical sense to deem an appeal period running before there is any definitive written action from which to appeal. In such circumstances, there would have been no impetus for the Legislature to amend the language of the Act, different though it is, because no parallel statutes had ever been construed to produce the undesired result Defendant argues for in its motion.

In the present case, the Plaintiff did not receive the Commission’s notice of the COA granted to DIV Trust until October 22, 2013, by which point — under Defendant’s reading of Section 10 — its time to appeal was just one week away from expiring. Although Plaintiff was able to move quickly because it had, in fact, attended the public hearing on September 19, there is no assurance that an aggrieved non-applicant will necessarily attend public hearings in other cases. The Act obviously contemplates this, inasmuch as interested parties who attend the public hearing would have no need to be provided written notice of its resulting determination. Indeed, for those parties attending the public hearing, the requirement of subsequent written notice of its results is completely superfluous — at least if one construes the Commission vote at such hearing as the triggering determination from which an appeal is taken.

Although, in the present case, the parties arranged for a transcript of the September 19 public hearing to be created in real time, thereby memorializing at least some of the Commission’s reasoning, the private commissioning of transcripts is surely not the norm in these kinds of local proceedings. Aggrieved non-applicants with rights of appeal who do not attend the public hearing (and who learn of the Commission’s action by written notice, as provided for in the Act) would have no way to make an informed decision as to whether to challenge such action in Superior Court, because there would typically be no record of the Commission’s reasons prior to issuance of the written notice of COA. The same is true for disappointed applicants. Although applicants will typically attend the public hearing, the Defendant’s reading of Section 10 would allow their time for appeal to diminish— and potentially expire altogether — before they ever receive the type of written reasons that would form the record from which an informed appeal might be taken.

This requirement was added in a 1965 amendment to the Act as a proviso which expressly conditioned the right to take an appeal; and all parties acknowledged during oral argument *234 that the provision of such notice of intent necessarily envisions a forward-looking appeal to be filed in the future. See also Parker, supra, 11 Mass.App.Ct. at 215 (“Parker timely entered notice of intention to appeal the conditions of the COA of December 2, and this grounded Parkefs action in Superior Court’) (emphasis added).

Whatever the precise purpose of this particular provision of the statute (it might have, for example, been intended to catalyze a conversation about settlement or compromise before the parties found themselves in court), there can be little doubt that the Legislature envisioned that an aggrieved person would have to give the Commission at least some notice of its intent to appeal before initiating civil litigation. Defendant’s construction of Section 10’s appeal language plainly frustrates this legislative design.

Plaintiff s insistence that the Appeals Court’s decision in Parker v. Beacon Hill Architectural Commission, 27 Mass.App.Ct. 211 (1989), settled this question is overstated. To be sure, the Court in Parker treated the written issuance of a COA as the reviewable action triggering the Act’s appeal period. But this was not a holding of the case, and the issue itself does not even appear to have been contested in the appeal. Parker is thus of limited precedential value in the present case, where the question of what action of the Commission starts the running of Section 10’s 30-day appeal period is joined squarely.